UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KATHERINE JOSEPHINE TOSTI,

                        Plaintiff,

        v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

DECISION & ORDER

15-CV-6250P

## PRELIMINARY STATEMENT

Plaintiff Katherine Josephine Tosti ("Tosti") brings this action *pro se* pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Supplemental Security Income Benefits and Disability Insurance Benefits ("SSI/DIB"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge.  (Docket # 13).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 9, 11).  For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

**BACKGROUND**

I.      **Procedural Background**

Tosti protectively filed for SSI and DIB on July 20, 2012, alleging disability beginning on June 1, 2011, due to anxiety, depression, and post-traumatic stress disorder ("PTSD").  (Tr. 165, 169).[1]  On September 25 and 26, 2012, the Social Security Administration denied Tosti's claims for benefits, finding that she was not disabled.  (Tr. 85-86).  Tosti requested and was granted a hearing before Administrative Law Judge William M. Manico (the "ALJ").  (Tr. 110-11, 120-24).  The ALJ conducted a hearing on July 1, 2013.  (Tr. 51-84).  In a decision dated August 21, 2013, the ALJ found that Tosti was not disabled and was not entitled to benefits.  (Tr. 23-34).

On February 27, 2015, the Appeals Council denied Tosti's request for review of the ALJ's decision.  (Tr. 1-6).  In the denial, the Appeals Council considered additional evidence submitted by Tosti that predated the ALJ's determination but was not submitted until after the ALJ had rendered his decision.  (Tr. 1-2, 5, 327-68, 369-402, 403-26).  The additional evidence consisted of records from the Monroe County Department of Human Services, which included psychological assessments of Tosti's mental abilities and limitations from two of her medical providers.  (Tr. 405-26).  Specifically, the records contained two assessments dated February 10, 2011[2] and August 23, 2012 completed by Pamela K. Rand ("Rand"), LCSW, who provided mental health treatment to Tosti from October 2010 to August 2012.  (Tr. 242, 407-11, 412-16).  The records also contained an assessment authored by Jewell Hopkins ("Hopkins"), LCSW, who provided weekly therapy to Tosti beginning in October 2012.  (Tr. 303-12, 418-22).

---

[1]  The administrative transcript shall be referred to as "Tr. __."

[2]  This assessment predates the alleged onset date.  (Tr. 407-11).

The additional evidence also included treatment notes from the Catholic Family Center, where Tosti participated in the Personalized Recovery-Oriented Services ("PROS") program between August 16, 2012 through October 30, 2012, and treatment notes from the Genesee PROS program, where she received services between December 2012 and September 2013. (Tr. 327-68, 369-402). The Appeals Council concluded that this additional evidence did not "provide a basis for changing the [ALJ's] decision." (Tr. 2).

Tosti also submitted a letter authored by Cheryl Steele ("Steele"), LCSW, dated July 16, 2014 relating to Tosti's mental health limitations. (Tr. 9-10). The letter indicated that Steele had provided mental health treatment services to Tosti while she had been enrolled in the PROS program at the Genesee Mental Health Center. (*Id.*). The Appeals Council declined to consider Steele's letter, reasoning that it constituted "new information . . . about a later time" because it postdated the ALJ's decision. (Tr. 2).

Tosti commenced this action on April 28, 2015 seeking review of the Commissioner's decision. (Docket # 1).

## II.     Medical Opinions of Record

### A.     Pamela Rand, LCSW

Rand completed a Monroe County Department of Human Services Psychological Assessment for Determination of Employability relating to Tosti on February 10, 2011. (Tr. 407-10). Rand indicated that Tosti had been diagnosed with depressive disorder not otherwise specified and panic attacks. (*Id.*). Rand opined that Tosti was very limited[3] in her ability to maintain attention and concentration for role tasks and to regularly attend to a routine

---

[3] "Very limited" was defined to mean unable to function 25% or more of the time. (*Id.*).

and maintain a schedule.  (*Id.*).  She also opined that Tosti was moderately limited[4] in her ability

to follow, understand, and remember simple instructions and directions, to perform simple and

complex tasks independently, and to perform low stress and simple tasks.  (*Id.*).  According to

Rand, Tosti was able to use public transportation, but was unable to participate in any activities

except treatment or rehabilitation for the next six to twelve months.  (*Id.*).

On August 23, 2012, Rand completed another Monroe County Department of

Human Services Psychological Assessment for Determination of Employability.  (Tr. 412-16).

Rand again indicated that Tosti had been diagnosed with depressive disorder not otherwise

specified and panic attacks.  (*Id.*).  Rand assessed a Global Assessment of Functioning ("GAF")

of 50.  (*Id.*).  Rand opined that Tosti was moderately limited in her ability to follow, understand,

and remember simple instructions and directions, and to perform low stress and simple tasks.

(*Id.*).  Rand indicated that there was insufficient data with respect to the other work-related

functions contained on the form.  (*Id.*). According to Rand, Tosti was able to use public

transportation, but was unable to participate in any activities except treatment or rehabilitation

and would need to be reevaluated in six months.  (*Id.*).

## B.    Yu-Ying Lin, PhD

On September 10, 2012, state examiner Yu-Ying Lin ("Lin"), PhD, conducted a

consultative psychiatric evaluation of Tosti.  (Tr. 236-39).  Tosti reported that she was thirty-one

years old and had driven herself to the examination.  (*Id.*).  She reported that she lived with her

five children, ages eleven, seven, five, three and seventeen months old.  (*Id.*).  Tosti reported that

she had attended high school in a regular education setting and had subsequently obtained her

GED.  (*Id.*).  She reported that her previous employment as a home health aide had been

---

[4] "Moderately limited" was defined to mean unable to function 10-25% of the time.  (*Id.*).

terminated for unknown reasons.  (*Id.*).  She was currently unemployed and her longest

employment had lasted three years.  (*Id.*).

   According to Tosti, she had been hospitalized for a suicide attempt when she was

sixteen years old and had been receiving mental health treatment since approximately 2006.

(*Id.*).  Tosti reported that a general preventative worker visited her house once a week and she

participated in a PROS program.  (*Id.*).  Tosti indicated that she had been prescribed medication,

but did not take it because she believed it was ineffective.  (*Id.*).  Tosti reported that she suffered

from loss of appetite and difficulty falling asleep.  (*Id.*).  She also suffered from depressive

symptoms, which had begun when she was approximately twelve and had significantly worsened

over the past years, particularly after she had discovered one of her children had been sexually

abused.  (*Id.*).  According to Tosti, her depressive symptoms included dysphoric moods, loss of

usual interests, irritability, fatigue, diminished self-esteem, and social withdrawal.  (*Id.*).  She

reported recurrent thoughts of suicide, including a plan, but stated that she lacked any intent.

(*Id.*).

   Tosti reported that she suffered from anxiety-related symptoms, which had

persisted for the past four years, including excessive worry, fatigue, irritability, restlessness,

difficulty with concentration, and hyperstartle response.  (*Id.*).  Additionally, she reported daily

panic symptoms since 2011, including palpitations, sweating, dizziness, and breathing difficulty,

and PTSD symptoms relating to her child's sexual abuse, including nightmares, flashbacks,

intrusive thoughts, hyperstartle responses, and hypervigilance.  (*Id.*).  She also reported paranoid

ideation since 2011, causing her to believe that someone would harm her or her children.  (*Id.*).

   Tosti reported that she was able to care for her personal hygiene and to complete

household chores, including cooking, laundry, and shopping, although her stress and anxiety

sometimes inhibited her ability to complete those tasks.  (*Id.*).  Tosti's mother sometimes assisted with household responsibilities.  (*Id.*).  Tosti reported that she was able to manage money, drive, and use public transportation.  (*Id.*).

Upon examination, Lin noted that Tosti appeared casually dressed, although somewhat dirty, and well-groomed.  (*Id.*).  She noted that Tosti's legs shook throughout the evaluation.  (*Id.*).  Lin opined that Tosti had fluent speech with clear voice and adequate language, circumstantial and tangential thought processes, full range affect and dysthymic mood, clear sensorium, full orientation, fair insight, fair judgment, and below average intellectual functioning.  (*Id.*).  Lin noted that Tosti's attention and concentration appeared to be impaired due to anxiety.  (*Id.*).  According to Lin, Tosti could perform simple calculations but made mistakes when attempting serial threes.  (*Id.*).  Tosti's recent and remote memory skills appeared impaired due to anxiety.  (*Id.*).  According to Lin, Tosti could recall three out of three objects immediately, two out of three objects after delay, and could complete five digits forward and four digits backward.  (*Id.*).

According to Lin, Tosti could follow and understand simple directions and instructions, perform simple tasks independently, learn new tasks, perform complex tasks with supervision, and make appropriate decisions.  (*Id.*).  Lin opined that Tosti was unable to maintain attention and concentration, relate adequately with others, or appropriately deal with stress.  (*Id.*).  Lin opined that Tosti also might be unable to maintain a regular schedule.  (*Id.*).  According to Lin, Tosti's difficulties stemmed from stress-related problems and lack of motivation.  (*Id.*).  Lin opined that the evaluation was consistent with her psychiatric symptoms, but that the symptoms did not appear to be significant enough to interfere with Tosti's ability to function on a daily basis.  (*Id.*).  Lin assessed that Tosti suffered from adjustment disorder with mixed anxiety and

depressed mood, PTSD, and substance abuse in early remission.  (*Id.*).  Lin recommended that

Tosti continue with psychological treatment and obtain psychiatric intervention and vocational

training.  (*Id.*).  She assessed her prognosis to be guarded to fair.  (*Id.*).

  **C.**  **L. Blackwell, Psychology**

    On September 24, 2012, agency medical consultant Dr. L. Blackwell

("Blackwell") completed a Psychiatric Review Technique.  (Tr. 90-91).  Blackwell concluded

that Tosti's mental impairments did not meet or equal a listed impairment.  (*Id.*).  According to

Blackwell, Tosti suffered from no limitations in maintaining social functioning, mild limitations

in her activities of daily living, and moderate limitations in her ability to maintain concentration,

persistence or pace.  (*Id.*).  According to Blackwell, Tosti had not suffered from repeated

episodes of deterioration.  (*Id.*).  Blackwell completed a mental Residual Functional Capacity

("RFC") assessment.  (Tr. 91-93).  Blackwell opined that Tosti suffered from moderate

limitations in her ability to maintain attention and concentration for extended periods, to

complete a normal workday and workweek without interruptions from psychologically-based

symptoms and to perform at a consistent pace without an unreasonable number and length of rest

periods, to respond appropriately to changes in a work setting, and to set realistic goals or make

plans independently of others.  (*Id.*).  Blackwell opined that Tosti was capable of performing

unskilled to semi-skilled work.  (*Id.*).

  **D.**  **Jewell Hopkins, LCSW**

    Hopkins completed a Monroe County Department of Human Services

Psychological Assessment for Determination of Employability relating to Tosti on July 3, 2013.

(Tr. 418-22).  Hopkins indicated that Tosti had been diagnosed with depressive disorder not

otherwise specified, anxiety disorder and rule out PTSD, and assessed a GAF of 48.  (*Id.*).

Hopkins opined that Tosti was very limited in her ability to perform low stress and simple tasks. (*Id.*). She also opined that Tosti was moderately limited in her ability to follow, understand and remember simple instructions and directions, perform simple and complex tasks independently, maintain attention and concentration for role tasks, and attend to a routine and maintain a schedule. (*Id.*). Hopkins assessed that Tosti had no evidence of limitation in her ability to maintain basic standards of hygiene and grooming. (*Id.*). According to Hopkins, Tosti was able to use public transportation, but was unable to participate in any activities except treatment or rehabilitation for the following six to twelve months, after which she should be reassessed. (*Id.*).

   **E.    Cheryl Steele, LCSW**

Steele authored a letter dated July 16, 2014 relating to Tosti's mental health. (Tr. 9-10). Although the letter postdated the ALJ's decision, the substance of the letter itself made clear that the opinions related to Tosti's participation in the PROS program beginning in November 2012, well before the ALJ's decision. (*Id.*). According to Steele, Tosti suffered from PTSD, which affected most areas of Tosti's life and caused her difficulty sleeping, making decisions, and concentrating. (*Id.*). Steele opined that Tosti also experienced intense fear in interpersonal relationships and mood lability. (*Id.*).

According to Steele, Tosti suffered from cognitive deficits, including decreased concentration, ability to attend to tasks, and ability to remain stationary for periods exceeding one hour. (*Id.*). Additionally, Steele opined that Tosti suffered from memory deficits and was easily overwhelmed under pressure or when dealing with complex instructions. (*Id.*).

According to Steele, Tosti reported that she experienced intense fear around males, particularly if they raised their voices. (*Id.*). She also reported reoccurring thoughts and visions of physical and emotional abuse suffered during past relationships. (*Id.*). Steele opined

that Tosti's PTSD-related symptoms and mood lability caused her to struggle in her daily life. (*Id.*).  According to Steele, Tosti would have difficulty tolerating a work schedule due to her hypervigilance around people and her difficulty maintaining a schedule and making decisions. (*Id.*).

## DISCUSSION

### I.    Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401

(1971) (internal quotation omitted).

> To determine whether substantial evidence exists in the record, the court must

consider the record as a whole, examining the evidence submitted by both sides, "because an

analysis of the substantiality of the evidence must also include that which detracts from its

weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be

sustained "even where substantial evidence may support the claimant's position and despite the

fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v.*

*Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d

60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

> A person is disabled for the purposes of SSI and disability benefits if he or she is

unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.

§§ 423(d)(1)(A) & 1382c(a)(3)(A).  In assessing whether a claimant is disabled, the ALJ must

employ a five-step sequential analysis.  *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)

(*per curiam*).  The five steps are:

> (1)  whether the claimant is currently engaged in substantial
>      gainful activity;
>
> (2)  if not, whether the claimant has any "severe impairment"
>      that "significantly limits [the claimant's] physical or mental
>      ability to do basic work activities";
>
> (3)  if so, whether any of the claimant's severe impairments
>      meets or equals one of the impairments listed in Appendix
>      1 of Subpart P of Part 404 of the relevant regulations;

(4)     if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity to perform his past work; and

(5)     if not, whether the claimant retains the residual functional capacity to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467.

"The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## A.     The ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. (Tr. 23-34). Under step one of the process, the ALJ found that Tosti had not engaged in substantial gainful activity since June 1, 2011, the alleged onset date. (Tr. 25). At step two, the ALJ concluded that there was insufficient evidence of any medically determinable impairments prior to December 31, 2011, Tosti's date last insured for DIB purposes. (*Id.*). Accordingly, the ALJ denied Tosti's claim for DIB benefits. (*Id.*). The ALJ also concluded that the record contained sufficient evidence after the date last insured to permit the conclusion that Tosti has the severe impairments of anxiety and depression. (*Id.*). At step three, the ALJ determined that Tosti does not have an impairment (or combination of impairments) that meets or medically equals one of the listed impairments. (Tr. 25-28). With respect to Tosti's mental impairments, the ALJ found that Tosti suffers from mild restrictions in activities of daily living and moderate difficulties in maintaining concentration, persistence and pace, and social functioning. (*Id.*). The ALJ concluded that Tosti has the RFC to perform the full range of work

at all exertional levels, but is limited to unskilled work involving simple instructions, interactions with others that are routine, superficial and incidental to the work being performed, and no contact with the public or fast-paced production work. (*Id.*). The ALJ further determined that Tosti must be permitted a work break approximately every two hours. (*Id.*). At steps four and five, the ALJ determined that Tosti is unable to perform past relevant work, but that other jobs exist in the national economy that Tosti could perform, including the positions of receiving checker and mail room clerk. (Tr. 32-33). Accordingly, the ALJ found that Tosti is not disabled. (*Id.*).

### B.    Tosti's Contentions

Tosti contends that the ALJ's mental RFC determination is not supported by substantial evidence and is the product of legal error. (Docket # 9-1). First, Tosti maintains that the ALJ failed in his duty to develop the record. (*Id.* at 23-30). Next, Tosti argues that the ALJ's RFC analysis is not based upon substantial evidence because Rand's and Hopkins's assessments were not adequately considered and remand is warranted because consideration of those assessments could have altered the ALJ's decision. (*Id.* at 30-33). Finally, Tosti maintains that the ALJ's credibility analysis is flawed because it was based upon mischaracterizations of the record. (*Id.* at 33-36).

## II.    Analysis

Tosti's principal argument is that the ALJ failed in his duty to adequately develop the record by not requesting records relating to Tosti's participation in the PROS program and not obtaining medical assessments from Tosti's treating providers. According to Tosti, the ALJ's duty to further develop the record was triggered by his recognition during the

administrative hearing that records relating to Tosti's participation in the PROS program were missing from the record.  (Tr. 70).  The government counters that the record was complete at the time of the hearing and the ALJ had no duty to further develop the record.

Subsequent to the ALJ's decision, Tosti obtained legal counsel, who marshaled additional evidence on her behalf, including the records reflecting her participation in the PROS program at both Genesee Center and Catholic Family Center.  (Tr. 327-68, 369-402).  In addition, Tosti's counsel obtained four assessments from three different mental health providers of Tosti's mental ability to perform work-related tasks.  (Tr. 8-10, 408-10, 412-16, 418-22).  As noted above, these records were submitted to the Appeals Council.

The regulations require the Appeals Council to consider "new and material" evidence "if it relates to the period on or before the date of the [ALJ's] hearing decision."  20 C.F.R. §§ 404.970(b) and 416.1470(b); *see Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996).  The Appeals Council, after evaluating the entire record, including the newly-submitted evidence, must "then review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of evidence currently of record."  20 C.F.R. §§ 404.970(b) and 416.1470(b); *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010).  "If the Appeals Council denies review of a case, the ALJ's decision, and not the Appeals Council's, is the final agency decision," although the "[n]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review."  *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (quoting *Perez v. Chater*, 77 F.3d at 45).  The reviewing court's task then is to determine "whether substantial evidence supports the ALJ's decision, when the new evidence is included in the administrative record."  *Ryder v. Colvin*, 2015 WL 9077628, *4 (W.D.N.Y. 2015).

"It is well established in the Second Circuit that an ALJ is under an obligation to develop the administrative record fully, to ensure that there are no inconsistencies in the record that require further inquiry, and to obtain the reports of treating physicians and elicit the appropriate testimony during the proceeding." *Martello v. Astrue*, 2013 WL 1337311, *3 (W.D.N.Y. 2013). Given the non-adversarial nature of a Social Security hearing, "[t]he duty of the ALJ, unlike that of a judge at trial, is to 'investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) (quoting *Butts*, 388 F.3d at 386). Accordingly, before determining whether the ALJ's conclusions are supported by substantial evidence, a court must first evaluate whether the claimant was provided a full hearing "in accordance with the beneficent purposes of the [Social Security] Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982); *see also Archbald v. Colvin*, 2015 WL 7294555, *3 (E.D.N.Y. 2015) ("[t]he reviewing court must ensure that 'all of the relevant facts [are] sufficiently developed and considered'") (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 509 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010)). "The ALJ's duty to develop the record is enhanced when the disability in question is a psychiatric impairment." *Ramos v. Colvin*, 2015 WL 925965, *9 (W.D.N.Y. 2015) (internal quotations omitted). Similarly, the ALJ has a heightened duty to develop the record when the claimant is proceeding *pro se*. *See Ericksson v. Comm'r of Soc. Sec.*, 557 F.3d 79, 83 (2d Cir. 2009).

In this case, Tosti testified that she participated in a PROS program through which she received mental health services, including classes and assistance managing her symptoms. (Tr. 71). Although Tosti's testimony regarding the program records was confusing, it plainly suggested that she believed she had submitted the records. (Tr. 71-72). The ALJ, despite

14

recognizing that the records were missing, apparently made no attempts to obtain the records or to advise Tosti to do so. (Tr. 70-72). Also troubling is the fact that the record did not contain assessments from several of Tosti's treatment providers regarding her mental ability to perform work-related functions. In other words, the ALJ's determination was made without the benefit of either the program records or her social workers' assessments.

Moreover, I find that the information missing from the record, which was later submitted by Tosti's attorney to the Appeals Council, could have influenced the Commissioner to reach a different conclusion regarding Tosti's request for benefits. Three of Tosti's mental health treatment providers, Rand, Hopkins and Steele, each opined that Tosti would have significant difficulties maintaining attention and concentration, and maintaining a regular schedule. (Tr. 9-10, 408, 421). Although these social workers are not considered "acceptable medical sources" under the regulations, 20 C.F.R. §§ 404.1513(a), 416.913(a), they are considered "other sources" within the meaning of 20 C.F.R. §§ 404.1513(d) and 416.913(d), and their opinions may be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function," *see* SSR 06-03P, 2006 WL 2329939, *2 (2006).

Indeed, Social Security Ruling 06-03P recognizes that "[m]edical sources . . . , such as . . . licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." *Id.* at *3. The ruling recognizes that such opinions are "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* The ruling directs the ALJ "to use the same factors for evaluation of the opinions of acceptable medical sources to evaluate the opinions of medical sources who are not acceptable medical sources, including licensed social workers." *Genovese v.*

*Astrue*, 2012 WL 4960355, *14 (E.D.N.Y. 2012) (internal quotations omitted).  "An ALJ is not required to give controlling weight to a social worker's opinion; although he is not entitled to disregard it altogether, he may use his discretion to determine the appropriate weight."  *Cordero v. Astrue*, 2013 WL 3879727, *3 (S.D.N.Y. 2013); *Jones v. Astrue*, 2012 WL 1605566, *5 (N.D.N.Y.) ("the Second Circuit has held that 'the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him'") (quoting *Diaz v. Shalala*, 59 F.3d 307, 313-14 (2d Cir. 1995)), *report and recommendation adopted*, 2012 WL 1605593 (N.D.N.Y. 2012); *Allen v. Astrue*, 2008 WL 660510, *8 (N.D.N.Y. 2008) (although not an acceptable medical source, "[a]s plaintiff's longtime treating psychotherapist and the only treating source who evaluated the disabling effects of plaintiff's mental impairments, [plaintiff's therapist's] opinion was relevant to the ALJ's disability determination . . . [;] [t]hus, the ALJ should have articulated why he discredited [the therapist's] reports").

Here, the opinions from Tosti's social workers were consistent with the assessment provided by Lin, which opined that Tosti would be unable to maintain attention and concentration or a regular schedule.  (Tr. 238-39).  The ALJ rejected Lin's assessed limitations and relied instead upon the evaluation provided by Blackwell, a non-examining physician who opined, in conclusory terms, that Tosti was capable of performing "unskilled to semi-skilled" work.  (Tr. 93).  In addition, Blackwell's assessment was based, not upon his own evaluation of Tosti, but solely upon his review of the record.  Although the government correctly notes that a non-examining physician's opinion may constitute substantial evidence, *see Miller v. Colvin*, 2016 WL 4478690, *13 (W.D.N.Y. 2016) ("the law refutes any suggestion that the opinions of non-examining physicians may never constitute substantial evidence to support an RFC

16

determination"), Blackwell's assessment in this case rested upon his review of an incomplete record.  Under such circumstances, I cannot say that the ALJ's determination was supported by substantial evidence.  *See Welsh v. Colvin*, 2016 WL 836081, *12 (W.D.N.Y. 2016) (ALJ decision not supported by substantial evidence where it relied upon non-examining physician opinion that was based upon an incomplete record) (collecting cases).

Indeed, had Blackwell reviewed the evidence submitted to the Appeals Council, he might have altered his conclusions regarding Tosti's ability to perform the requirements of unskilled or semi-skilled work.  More importantly, had the ALJ been aware of the assessments from three of Tosti's medical providers, which were consistent with the assessment provided by Lin, the ALJ might have altered the relative weights he accorded to Lin and Blackwell.[5]  *See Ryder v. Colvin*, 2015 WL 9077628 at *5 (remanding where additional evidence submitted to Appeals Council, which included an opinion from a treating provider, "reasonably would have altered the weight [the ALJ] gave to the consulting opinions, especially [the non-examining physician's opinion], which was entirely based on a review of the incomplete evidence in the administrative record").

Accordingly, I conclude that remand is warranted for reconsideration of the entire administrative record, including the new evidence submitted to the Appeals Council.  Although remand is warranted for the reasons stated herein, I note that the ALJ's rationale for discounting the attention, concentration and scheduling limitations assessed by Lin was not well-founded.  In his decision, the ALJ determined that Lin's assessment that Tosti was unable to maintain attention, concentration and a regular schedule was facially inconsistent with Lin's opinion that Tosti had the mental capacity to learn new tasks, perform complex tasks with supervision, and

---

[5]  Additionally, the February 2011 assessment authored by Rand may have caused the ALJ to reach a different conclusion regarding whether Tosti suffered from any determinable medical impairments prior to her date last insured.

make appropriate decisions.  (Tr. 32).  I disagree that the limitations assessed by Lin are necessarily inconsistent.  For instance, it is entirely plausible that Tosti could have the mental capacity to learn new tasks, but be unable to sufficiently maintain attention and concentration in order to perform those tasks throughout a full workday.

I likewise agree with Tosti that the ALJ's repeated mention of Tosti's parenting responsibilities throughout his decision suggests that he may have improperly equated her ability to care for her five children with an ability to work.[6]  *See Iacobucci v. Comm'r of Soc. Sec.*, 2015 WL 4038551, *7 (W.D.N.Y. 2015).  Although Tosti's ability to care for her children is certainly relevant, *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009), the ALJ's decision suggests that he may have overlooked substantial evidence in the record suggesting that Tosti struggles with her childcare responsibilities.  As noted by Tosti, that evidence included repeated police presence at her house, involvement by Child Protective Services, serious allegations of sexual abuse involving her children (not perpetrated by Tosti), and weekly parental support provided by a preventative services worker.  (Tr. 63, 240, 257, 267, 304-05).

On remand, the ALJ should fully consider Tosti's mental health treatment, including her participation in the PROS program, as well as the assessments submitted by her social workers.  The ALJ should reevaluate the weight to be accorded to all of the opinions of record, including the opinions submitted by Blackwell, Lin, Rand, Hopkins and Steele, and recontact those physicians for additional information, if necessary.  In his decision, the ALJ should identify the weight he accords to each of the opinions of record and explain his reasons

---

[6]  In a decision also issued today, this Court remanded for further proceedings Tosti's application for benefits submitted on behalf of one of her children.  *See* 15-CV-6107 (Docket # 13).  In connection with that application, ALJ Manico (the same ALJ who decided Tosti's application on review in this decision) denied benefits in part because he concluded that "many if not all of the claimant's troubles are the result of parental mismanagement."  Although not before the Court in connection with the pending motions, the ALJ's conclusion that Tosti's child's struggles are due to parental mismanagement would appear to be at odds with any conclusion that Tosti's ability to care for her children necessarily warrants denial of her claim for benefits.

for discounting or rejecting any opinions.  *See Lesterhuis v. Colvin*, 805 F.3d at 88 (that treating physician's opinion is generally entitled to controlling weight does not preclude ALJ from concluding, upon remand, that opinion is "not entitled to any weight, much less controlling weight, but that determination should be made by the agency in the first instance").

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 11)** is **DENIED**, and Tosti's motion for judgment on the pleadings **(Docket # 9)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
         September 6, 2016